AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>OSCAR ALFREDO OCHOA COLON<br>and<br>JESUS ANTONIO HERNANDEZ MONJARAZ<br><br>*Defendant(s)* | )<br>)<br>)   Case No.  8:17-mj-1113-JSS<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 7, 2017__ in the county of __Pinellas__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

See attcahed affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Joseph A. Pittaluga, Special Agent, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/8/17

_____
Judge's signature

City and state:   Tampa, Florida    JULIE S. SNEED, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jospeh Pittaluga, being duly sworn, state as follows:

### Introduction and Agent Background

1. I am a Special Agent of the Drug Enforcement Administration (DEA), Department of Justice. As such, I am "an investigative or law enforcement officer of the United States," as defined within Section 2510(7) of Title 18, United States Code (USC), and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1), 846 and 856.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since August 2016. In September 2016, I attended the DEA's twenty-week basic agent training academy. Subsequent to graduation, I was assigned to the DEA Tampa District Office. I have a Bachelor of Science Degree in Criminal Justice from the University of South Carolina.

3. As part of my duties as a DEA Special Agent, I investigate drug trafficking organizations, including their smuggling routes and the techniques they use for transporting controlled substances such as marijuana, cocaine, methamphetamine and heroin. My duties include investigating drug trafficking organizations, interviewing witnesses, victims and suspects, identifying people involved, developing probable cause for cases, handling and processing various types of evidence, and assembling cases for prosecution. While attending the DEA Training Academy, I received specialized training in the identification of, the field-

testing of, and the investigation of illegal drugs and drug trafficking techniques. I have assisted other officers and detectives with controlled substance cases as evidence custodian, surveillance team member, photographer, entry / search team member, and handler of confidential & citizen informants. The training also encompassed investigation techniques, including conducting Title III wiretap investigations. I have participated in drug cases and controlled delivery cases, assigning and directing other officers in the investigations.

4. Prior to being a DEA Special Agent, I was a sworn law enforcement officer with the St. Petersburg Police Department, located in St. Petersburg, Florida, for approximately eleven (11) years. For approximately eight (8) of those years, I was assigned as a detective assigned to the St. Petersburg Police Narcotics Division. During that time, I testified in numerous judicial proceedings for the violation of controlled substance laws. I also received specialized training in illegal drug smuggling and distribution investigations. I participated in hundreds of illegal drug investigations and undercover operations. I debriefed, and participated in the debriefings of defendants, informants, and witnesses who had personal knowledge of major drug trafficking organizations. I participated in all aspects of drug investigations, including: undercover, operations, questioning of witnesses, the execution of search and arrest warrants, the use of undercover officers, the utilization of informants, conducting surveillance, analyzing information obtained from court-ordered pen register/trap and trace intercepts, and analyzing telephone toll information obtained as a result of administrative subpoenas issued by the DEA.

5. I have been involved in numerous drug investigations, which have resulted in numerous arrests and seizures of narcotics. I am familiar with the method of operation of drug buyers and sellers and with the "slang" or coded language used to describe drug transactions. During my career in law enforcement, I have conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and/or other documents. I have directed numerous confidential informants to successfully infiltrate various narcotics enterprises through intelligence gathering, participation in consensual recordings, and/or controlled purchases of illegal drugs.

6. I have been involved in Organized Crime Drug Enforcement Task Force (OCDETF) drug conspiracy and distribution investigations. I have assisted in the investigation of major, complex cases to include illegal drug conspiracy investigations. In the past, I have conducted investigations of state and federal illegal drug violations. I have previously participated in state and federal wire investigations that intercepted drug trafficking crime organizations. In those investigations, my duties included, surveillance, analyze/interpret intercepted communications, and preparing and executing arrest and search warrants.

7. Based upon my training, experience and participation in these and other financial / drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

a.  In my experience, I have found that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses / controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

b.  It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned books, records and ledgers, etc., are frequently maintained in the drug trafficker's residence and sometimes in the trafficker's vehicle(s).

## Statutory Authority

8. I submit this affidavit in support of a criminal complaint charging **Oscar Alfredo OCHOA COLON** and **Jesus Antonio HERNANDEZ MONJARAZ** with the following federal offense: Conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §846.

9. I submit only those facts I believe are relevant to determine probable cause. This affidavit is not a complete statement of all the facts of the investigation. I learned the following facts through consultation with other law enforcement officers, reviewing reports, my personal investigative efforts, as well as my experience and background. The source of information and the grounds for this belief are as follows.

## Investigation Background

10. Throughout 2016 to present, the DEA has been investigating a drug trafficking organization based in Mexico (the "DTO"). A member of the DTO, hereinafter referred to as Member #1, has arranged for the delivery of multiple kilograms of methamphetamine to a confidential source ("CS").

## Investigation

11. In February 2017, the CS negotiated with Member #1, over recorded telephone calls. As a result of the negotiations, Member #1 agreed to provide the CS with approximately two kilograms of methamphetamine in exchange for several

thousand dollars. The CS agreed to broker the drug transaction between Member #1 and an "associate" of the CS. The associate was a DEA undercover Task Force Agent ("UC"). The CS was later contacted by another member of the DTO, Member #2, at a Mexican telephone 52-8261088916. The CS supplied Member #2 with a phone number to contact the UC.

12. On February 7, 2017, the UC received a phone call from a Mexican telephone 52-8261088916. The caller agreed to meet with the UC at the Target parking lot located at 2747 Gulf to Bay Boulevard, Clearwater, Florida.

13. On February 7, 2017, DEA agents established surveillance in the Target parking lot located at 2747 Gulf to Bay Boulevard, Clearwater, Florida. The UC arrived driving an undercover vehicle. The UC spoke with a person, later identified as **OCHOA COLON**, and directed him to the UC's location. Shortly thereafter, DEA agents saw a black Nissan sedan bearing a Mexican license plate arrive in the parking lot. The black Nissan parked next to the undercover vehicle. **OCHOA COLON** exited the passenger side of the black Nissan and opened the rear driver's side door of the undercover vehicle. **OCHOA COLON** told the UC that he only had "one" and stated that the "second one" was on the way. The UC told **OCHOA COLON** that he was supposed to receive two. **OCHOA COLON** advised the UC that the UC needed to speak with "Coyote." **OCHOA COLON** then placed a Wonder Core Ab Machine box in the rear passenger compartment of the undercover vehicle. The UC directed **OCHOA COLON** to take possession of a gray grocery

6

bag that contained four bundles of fake United States currency, which **OCHOA COLON** took possession. The UC also gave **OCHOA COLON** $1,000 in cash. A later search of the Wonder Core Ab Machine box yielded the discovery of an Ab Machine. Concealed in the seat cushion of the Ab Machine was approximately 1120 grams of a crystal like substance. The substance was fielded tested by law enforcement and found to be positive for the presence of methamphetamine.

14.     **OCHOA COLON** then entered the front passenger seat of the black Nissan and departed the parking lot. The driver of the vehicle was later identified as **HERNANDEZ MONJARAZ**. Surveillance was maintained on the Nissan. The vehicle eventually traveled to Ben T. Davis Beach, located at 7650 West Courtney Campbell Causeway, Tampa, Florida. **OCHOA COLON** and **HERNANDEZ MONJARAZ** exited their vehicle and loitered around the beach. SA Brandon Cain observed **OCHOA COLON** pacing throughout the parking lot with a cellular phone placed up to his ear. Members of the Tampa Police Department arrived and detained **OCHOA COLON** and **HERNANDEZ MONJARAZ**.

15.     A drug alerting canine was deployed on the vehicle and alerted to the odor of narcotics. A search of the vehicle yielded the gray grocery bag containing the four bundles that contained fake United States currency. The bag was located on the front passenger floorboard. Two of the four bundles that contained the sham United States currency were torn open.

16.     **OCHOA COLON** was read his *Miranda* rights and signed the waiver form in the presence of SA Anthony Spatola and GS Rodolfo Cesario. GS Cesario acted as an interpreter and translated SA Spatola's questions from the English to Spanish. **OCHOA COLON** explained he was contacted by a person named "Lino" in Monterrey, Mexico. Lino asked **OCHOA COLON** to collect money in the United States. **OCHOA COLON** said he agreed to collect money on Lino's behalf. **OCHOA COLON** stated he and **HERNANDEZ MONJARAZ,** and a third person traveled from Mexico to San Antonio, Texas. **OCHOA COLON** stated they transported another person from Mexico to San Antonio, Texas. **OCHOA COLON** stated they dropped the person off at an apartment in San Antonio. **OCHOA COLON** was then in contact with "Coyote," an associate of Lino. Coyote directed **OCHOA COLON** to meet with Coyote's associate. **OCHOA COLON** said that he and **HERNANDEZ MONJARAZ** met with Coyote's associate in a Wal-Mart parking lot in San Antonio, Texas. There the associate provided **OCHOA COLON** with an "exercise apparatus."

17.     **OCHOA COLON** said the associate was on the phone. **OCHOA COLON** said he heard the associate tell the unknown caller, "El hielo ya". **OCHOA COLON** stated he did not know what the exercise box contained, but believed it contained "contraband." **OCHOA COLON** did not know if "hielo" was slang to identify a particular type of narcotics. I have been told by a Spanish speaking law enforcement agent that "hielo" translates into the English language as

"ice." Based on my training, I know "ice" is a common term used by narcotics traffickers to identify crystal methamphetamine.

18.     According to **OCHOA** COLON, after taking possession of the box, he and **HERNANDEZ MONJARAZ** traveled to Tampa, Florida. On February 7, 2017, he and **HERNANDEZ MONJARAZ** arrived at the Target parking lot. There **OCHOA COLON** met with a person driving a silver Hyundai vehicle. **OCHOA COLON** advised he gave the person the "exercise box" and took a bag containing money. **OCHOA COLON** stated the person also gave him a $1,000. **OCHOA COLON** stated the money in the bag was fake. **OCHOA COLON** was in possession of a black Samsung Galaxy S4 cellular phone, phone number 52-8261088916. This is the same number that contacted the UC.

19.     **HERNANDEZ MONJARAZ** was read his *Miranda* rights and signed a waiver of those rights. SA Anthony Spatola and GS Rodolfo Cesario interviewed **HERNANDEZ MONJARAZ**. GS Cesario acted as an interpreter and translated SA Spatola's questions from English to Spanish. **HERNANDEZ MONJARAZ** stated he and **OCHOA COLON** traveled from Mexico to Tampa, Florida. They left Mexico on Saturday, February 4, 2017, and traveled to the United States. **HERNANDEZ MONJARAZ** stated they transported another person from Mexico to San Antonio, Texas. **HERNANDEZ MONJARAZ** explained that this person paid to be driven to San Antonio. **HERNANDEZ MONJARAZ** advised this person

was legally transported into the United States. **HERNANDEZ MONJARAZ** stated they dropped the person off at a residence in San Antonio.

20. From there they traveled to a nearby Wal-Mart. While at the Wal-Mart, **HERNANDEZ MONJARAZ** advised that **OCHOA COLON** received a phone call. **HERNANDEZ MONJARAZ** said they exited the Wal-Mart and **OCHOA COLON** met with a person in the parking lot. The person gave **OCHOA COLON** a box containing gym equipment. **OCHOA COLON** told **HERNANDEZ MONJARAZ** that they needed to travel to Florida. **HERNANDEZ MONJARAZ** said they drove directly to Florida. While traveling to Florida, **OCHOA COLON** told **HERNANDEZ MONJARAZ** to obey the laws of the road and not to speed. **HERNANDEZ MONJARAZ** said **OCHOA COLON** described that the box contained "work".

21. Throughout the trip, **HERNANDEZ MONJARAZ** learned from **OCHOA COLON** that he was speaking with "Coyote" and "Primo." **HERNANDEZ MONJARAZ** said on February 6, 2017, he overheard a phone call between **OCHOA COLON** and an unknown caller. **HERNANDEZ MONJARAZ** stated from the call he learned the box contained one kilogram of "crystal." **HERNANDEZ MONJARAZ** said that he knows "crystal" to be drugs, but was unsure what type of drugs. **HERNANDEZ MONJARAZ** said on February 7, 2017, he and **OCHOA COLON** traveled to a Target store. There **OCHOA COLON** met with a person driving a silver truck and gave the person the box. **HERNANDEZ**

MONJARAZ said OCHOA COLON received a bag from the person that contained money. HERNANDEZ MONJARAZ stated that OCHOA COLON opened the packaging and discovered the money was fake. HERNANDEZ MONJARAZ said he suspected that they were transporting drugs.

### Conclusion

22. For the reasons set forth above, I believe that probable cause exists to believe that HERNANDEZ MONJARAZ and OCHOA COLON committed the following federal offense: Conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §846.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Joseph Pittaluga, Special Agent
Drug Enforcement Administration

Subscribed and sworn before me
This __8__ day of February, 2017.

_____
JULIE S. SNEED
United States Magistrate Judge

T:\_Cases\Criminal Cases\O\Ochoa Colon, Oscar Alfredo_2017R0pend_SSH\x_Complaint Affidavit_OCHOA COLON and HERNANDEZ MONJARAZ.docx

11